IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SANTOIN RUSSELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-CV-681-MAB |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| FAIYAZ AHMED, and DEE DEE | ) |
| BROOKHART, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motions for summary judgment on the issue of exhaustion filed by Defendants Wexford Health Sources, Inc. ("Wexford") (Doc. 47), Dr. Faiyaz Ahmed (Doc. 51), and Dee Dee Brookhart (Doc. 56). Plaintiff Santoin Russell filed responses in opposition to the motions (Docs. 60, 65, 66). Defendant Wexford filed a reply brief (Doc. 64). For the following reasons, the motions for summary judgment are granted.

## BACKGROUND

Plaintiff Santoin Russell, an inmate of the Illinois Department of Corrections ("IDOC"), who is currently housed at Stateville Correctional Center, filed this civil rights action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights (Doc. 1). Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, the complaint was dismissed for failure to state a claim, but Russell was granted leave to

amend (Doc. 7). Russell filed a First Amended Complaint alleging that on September 6, 2017, while incarcerated at Menard Correctional Center, he was stabbed with a knife above his left eye during an altercation on the yard (Docs. 68, 11). He received stiches but was not given any pain medication by Jane or John Doe. The next day he was transferred to Lawrence Correctional Center, where he filed grievances and repeatedly complained about his pain, swelling, and blurred vision. He did not receive treatment, specifically pain medication. He was seen by Defendant Dr. Ahmed on October 15, 2017. Dr. Ahmed told Russell that his symptoms were due to allergies and prescribed nasal spray. Dr. Ahmed did not give Russell any pain medication, and Russell continued to experience pain, swelling, and blurred vision.

On April 7, 2018, Russell was given ibuprofen, and on April 9, 2018, he was scheduled to see a doctor, but the appointment was canceled. Because he was not receiving treatment, on April 20, 2018, Russell went on a hunger strike, which led to him getting an x-ray. The x-ray came back negative. Russell continued to experience swelling and blurred vision and asked for an MRI. The request was denied. Several weeks later, a nurse treated Russell with ibuprofen and antibiotics for nerve damage. Following the treatment for nerve damage, everything healed, but Russell still suffers from hearing loss in his left ear as a result of receiving delayed diagnosis and medical care. Russell is proceeding on the following claims:

> **Count 2:** Eighth Amendment claim of deliberate indifference against Wexford, Dr. Ahmed, and Dee Dee Brookhart for denying and delaying treatment while at Lawrence for nerve damage

caused from being stabbed.[1]

In the motions for summary judgment, Defendants argue that Russell failed to grieve his claims against them for the alleged deliberate indifference prior to initiating this lawsuit. Specifically, Wexford cites to three grievances submitted by Russell regarding his claims in this lawsuit—a grievance dated October 15, 2017, a grievance dated November 2, 2017, and a grievance dated April 26, 2018. (Doc. 48). None of the three grievances went through every step of the grievance process and none of them name or describe Wexford or discuss a Wexford policy regarding inadequate medical treatment at Lawrence. Wexford argues that because Russell failed to follow proper procedure when submitting his grievances and did not include complaints against Wexford in those grievance, he has failed to exhaust his administrative remedies.

Dr. Ahmed and Warden Brookhart also cite to three relevant grievances dated September 6, 2017, November 2, 2017, and April 26, 2018 (Docs. 52, 57). Similar to Wexford, Dr. Ahmed and Warden Brookhart assert that the none of the grievances went through every step of the grievance process and none of the grievances include sufficient complaints against them regarding inadequate medical treatment. Warden Brookhart further argues that her signature is also not found on the grievances, alerting her to an issue with Russell's medical treatment.

In response, Russell argues that he did follow grievance procedures when submitting his grievances, but that Lawrence officials failed to provide timely responses,

---

[1] Because Russell failed to identify John Doe and Jane Doe, they, as well as the claims against them (Count 1), were dismissed without prejudice on February 17, 2021 (Doc. 73).

making the process unavailable to him. (Doc. 60-1, pp. 4, 5, 21-22, 26; Doc. 65, pp. 9, 11-12; Doc. 66, p. 13). He also claims that he is not required to specifically name a defendant in a grievance, when the name is unknown, for the grievance to be properly submitted. (Doc. 60-1, pp. 16, 24).

## **LEGAL STANDARDS**

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). No hearing is necessary when there is no disputed issue of fact.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). The purpose of the exhaustion requirement is to "alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam) (citations omitted). *See also Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

As an inmate in the IDOC, Russell was required to follow the three-step grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). The regulations first require the grievance to first go through the inmate's counselor, then the grievance officer and warden, and then appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board for a final determination. *Id.* at §§ 504.810(a),[2] 504.830(e), 504.850(a), (d),

---

[2] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

(e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

The regulations also require, in pertinent part, that a prisoner's grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c) (2017). If the offender does not know the names of individual, he "must include as much descriptive information about the individual as possible." *Id.* The grievance forms used by Russell likewise asked for "a description of what happened, when and where it happened, and the name or identifying information for each person involved" (*see* Doc. 48-1, pp. 71–72; Doc. 60-1, p. 31; Doc. 57-4, pp. 61–62). In short, the grievance must provide sufficient information to identify the defendant as the target of the complaint or to implicate them

in the alleged wrongdoing.[3]

## ANALYSIS

The Court finds that there four grievances at issue in this case. The grievances are dated September 6, 2017, October 16, 2017, November 2, 2017, and April 26, 2018. Russell claims that his administrative remedies were rendered unavailable because he either did not receive a response or a timely response from grievance officials to any of the four grievances. But even if it is true that Russell was thwarted from completing the grievance process, the Court must also look at whether the content of the grievances was sufficient to cover Russell's claims against Defendants. *See, e.g., Sapp v. Kimbrell,* 623 F. 3d 813, 823-24 (9th Cir. 2010) (holding that in order show that his attempts to file grievances were hindered, the prison must establish that "he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court").

**Grievance submitted on or around September 6, 2017**

For this grievance, the Court opts to skip over whether it was fully exhausted and instead focus on whether the content was sufficient to cover the claims at issue. The exact date of this grievance is unclear. Russell said three different things in his response briefs.

---

[3] *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (explaining "fatal defect" in grievance was "the absence of anything in it to indicate that [the defendant] was the target."); *see also Ward v. Hoffman*, 670 Fed. Appx. 408, 410 (7th Cir. 2016) (affirming summary judgment based on prisoner's failure to exhaust where he complained only about the procedures used by the adjustment committee and did not mention excessive force or the defendants); *Ambrose v. Godinez*, 510 Fed. Appx. 470, 472 (7th Cir. 2013) (affirming the dismissal of prison officials where the plaintiff's grievance failed to mention the officials by name or otherwise implicate them in the alleged constitutional violation).

He first said that he filed the first grievance on September 7, 2017 (Doc. 60-1, p. 5).[4] Then he said he filed his first grievance on September 16, 2017 (Doc. 65, pp. 3, 7–8).[5] Then he said he submitted his first grievance on September 6, 2017 (Doc. 66, p. 10).[6]

Russell did not submit a copy of this grievance (*see* Docs. 60-1, 65, 66). Defendants Brookhart and Ahmed confirm that there is no copy of the grievance in the grievance records, Russell's pleadings, or in submissions to the ARB. (Doc. 52, p. 5-6; Doc. 57, p. 7). Without a copy of the grievance, the Court must rely on Russell's representations as to what the grievance said. By all indications, it was about the September 6, 2017 attack and the inadequate medical treatment he received at Menard on the day of the attack.[7] Therefore, it is impossible for this grievance to cover any conduct by Warden Brookhart and Dr. Ahmed, which occurred at Lawrence after Russell's transfer there on September 7, 2017, or any Wexford policy at play at Lawrence.

**October 15, 2017 Grievance**

Russell claims that after the September 6, 2017 grievance, he filed a second

---

[4] A subsequent letter from Russell to the ARB indicates that there was an August 7, 2017 grievance "for medical treatment and pain, after being stab [sic] in my face." (Doc. 52-1, p. 51). Given that the attack occurred on September 6th, it seems that Plaintiff mistakenly stated the month of the grievance as August in his letter to the ARB.

[5] This date appears to have been taken from the cumulative counseling summary, which contains an entry on October 2, 2017 indicating that the counselor "Responded to an 9/16/17 GRIEVANCE & returned to I/M, Re: Med Trt." (Doc. 48-4, p. 6).

[6] A subsequent grievance indicates there was a September 6, 2019 grievance (Doc. 57-4, pp. 61-62).

[7] *See* Doc. 8, p. 25 ("I wrote a grievance to receive pain medication and among other reasons. However, that grievance dated Sept. 6, 2017 was never response too [sic]."); Doc. 52-1, p. 51 ("for medical treatment and pain, after being stab [sic] in my face."); Doc. 60-1, p. 5 (stating he wrote a "grievance on 9/7/2017 regarding the stabbing incident at Menard and the lack of medical treatment [I] received."); Doc. 66, p. 10 ("9/6/2017 grievance [was] regarding not receiving pain medication for him being stabbed").

grievance dated October 15, 2017 (Doc. 60-1, pp. 6, 30; Doc. 48-1, pp. 71-72). Once again, the Court opts to skip over whether this grievance was fully exhausted and instead focus on whether the content was sufficient to cover the claims at issue.

The vast majority of this two-page grievance is dedicated to complaints about the disciplinary ticket Russell received following the altercation with other inmates at Menard (Doc. 57-4, pp. 117–120). At the very end of the grievance, Russell very briefly mentioned that he was still dealing with pain from the attack and had made numerous requests for medical treatment "through grievances, requests, slips, and in person" but was only seen for asthma (*see id.*). Russell did not request any specific relief; he left that section of the grievance blank (*see id.* at p. 119). In responding to the grievance, the grievance officer processed it as a complaint only about the disciplinary process (*see id.*). It was not processed as a complaint about medical care.

This grievance does not refer to Dr. Ahmed by name, title, or description, nor does it describe any conduct attributable to him. The grievance reads as though Russell repeatedly asked to be seen for pain, but those requests went nowhere. That is, he was not seen by medical personnel for his pain. There is nothing in the grievance that suggests Russell actually had a visit with a doctor, was examined, and was misdiagnosed or unhappy with the care he received, which is what he alleges in the First Amended Complaint with respect to Dr. Ahmed (Doc. 68, p. 7). In fact, in a subsequent grievance, Russell seemingly admits that he submitted the October 15th grievance before his appointment with Dr. Ahmed (Doc. 57-4, pp. 61–62). Consequently, the October 15, 2017 grievance cannot and does not cover Russell's claims against Dr. Ahmed.

It likewise does not cover his claims against Wexford. There are no complaints against Wexford in the grievance or about a prison-wide policy that resulted in inadequate treatment. The grievance is also silent as to Dee Dee Brookhart. It does not refer to her by name, title, or description. Consequently, this grievance did not contain information sufficient to put prison officials on notice of any issue with Wexford or Brookhart.

**November 2, 2017 Grievance**

Russell filed an emergency grievance dated November 2, 2017 (Doc. 60-1, pp. 31-32, 51, 53; Doc. 57-4, p. 69). Once again, the Court opts to skip over whether this grievance was fully exhausted and instead focus on whether the content was sufficient to cover the claims at issue.

At the top of the grievance, Russell wrote that the issue being grieved occurred at Menard. He recounted that he was stabbed four times on September 6, 2017 on the yard at Menard. He complained that staff at Menard failed to inform Lawrence staff that he had stiches that needed to be removed and a TB shot that needed to be checked. Menard staff also failed to photograph or provide treatment for wounds to his back and also failed to take x-rays for nerve damage. He asks Warden Lamb at Lawrence to have his wounds medically documented, including taking photographs, and that x-rays be taken for nerve damage because he is experiencing lingering pain due to Menard's inadequate treatment.

This grievance makes no mention of Defendants by name nor does it describe them or any conduct attributable to them. There is nothing in the grievance that would notify prison officials that Russell was not receiving adequate medical treatment at Lawrence

due to a Wexford policy, because Brookhart ignored his requests and grievances, or because Dr. Ahmed misdiagnosed him and provided inadequate treatment. Rather, he is asking Lawrence officials to correct the purported mistakes made by medical staff at Menard. Consequently, this grievance cannot be used to exhaust as to Defendants Wexford, Dr. Ahmed, or Warden Brookhart.

**April 26, 2018 Grievance**

Russell filed an emergency grievance dated April 26, 2018 (Doc. 57-4, pp. 61-62; Doc. 65, p. 12; Doc. 48-1, p. 10). In this grievance, Russell stated in pertinent part that he had a doctor's visit "within 30 days of October 15, 2017." The doctor examined Russell, feeling around his face, and asking where he felt pain and pressure. The doctor seemed to believe that "being stab[bed] cause[d] a chain reaction to my allergies" and he prescribed a nasal spray. Russell stated that he didn't receive the nasal spray until mid-December 2017, and while it helped with his allergies, it did not help with his facial pain and swelling. He stated that he was still in pain seven months after the attack, the pain was intense "at times," and his left eye was blurry. He said that he made repeated requests to see a doctor, but his last two appointments were canceled. And the ibuprofen he received on occasion from nurses was ineffective at treating his pain. As of April 26, 2018, he was on a hunger strike until his pain was properly treated. He further indicated that he was awaiting first-stage responses to five other grievances and second-stage responses to five more. He said "I've wrote Warden Brookhart a couple of times on this manner [sic]." For relief, he asked to be seen by a doctor and have his pain treatment and to get responses to all of his outstanding grievances.

This grievance undeniably covers Russell's claim against Dr. Ahmed. However, the Court finds that it was not properly exhausted. The April 26, 2018 grievance was filed on an emergency basis (Doc. 57-4, pp. 61-62). The Warden received it on May 2, 2018 and that same day determined it was a non-emergency (*Id.*) Russell was directed to resubmit the grievance in the normal manner (*Id.*). Russell gives conflicting stories as to what he did next.

In his first response brief, Russell indicates that he submitted the grievance to his counselor but it was never received, stating "this grievance was lost" (Doc. 60-1, p. 29). (*Id.*). In his second response brief, Russell once again indicates that he submitted this grievance to his counselor (Doc. 65, p. 6). But six pages later in that same brief, Russell said he did not submit it through the normal grievance process because "he did not need to" according to *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) and § 504.850(a) of the Administrative Code (Doc. 65, p. 12).

In his third response brief, Russell says that once this grievance was deemed a non-emergency on May 2, 2018, he submitted it to the ARB on May 31st "as stated in *Thornton v. Snyder* . . . and 20 Ill. Admin Code § 504.850(a) exhausting this grievance . . . ." (Doc. 66, p. 34).[8] This seems to be an admission that he did not submit the grievance through the normal process and instead went straight to the ARB. However, on the next page, Russell expressly states that he was told to send the grievance through the normal process

---

[8] The pages of this brief were filed out of Order. Russell discusses the April 26, 2018 grievance on the pages he numbered as 12 and 13 of his brief. When the brief was filed, these pages were automatically numbered as pages 34 and 12. The Court cites to the page numbers created by CM/ECF.

and he "did as directed" (Doc. 66, p. 12). He goes on to say, "The grievance officer refused to respond within the (60) day time limit." (*Id.*).

Russell appears to be arguing that pursuant to *Thornton* and § 504.850(a), once his grievance was deemed a non-emergency, he could appeal that determination by going straight to the ARB. That is not true. Under the version of the Illinois Administrative Code in effect at the time Russell penned his April 26, 2018 grievance, if the warden determined that a grievance should not be handled on an emergency basis, the offender had to resubmit the grievance through the normal grievance process. 20 ILL. ADMIN. CODE § 504.840(c) (2017).

Furthermore, a copy of the April 26th grievance previously submitted by Russell indicates that he did, in fact, resubmit the grievance through the normal process—his counselor received the grievance on May 14th and responded on May 22nd (Doc. 8, p. 25). Russell never asserted that he submitted the grievance to the grievance officer for second-level review (*see* Docs. 60, 65, 66), and there is no other evidence in the record that suggests he did. But even if he did, he gave the grievance officer less than a week to respond because it is undisputed that Russell sent the grievance, along with eight other grievances, to the ARB, where they were received on May 31st (Doc. 48-1, pp. 10–37).[9] The Administrative Code provides that grievance officers are expected to consider a grievance and report their recommendations in writing to the warden within two months

---

[9] It is unclear when Russell mailed the grievance to the ARB, but it was obviously sometime before May 31, 2018. On June 26, 2018, a delegate from the ARB returned all of the grievances to Russell without addressing them because they did not contain responses from the grievance officer and the warden (Doc. 48-1, p. 10).

when possible. 20 ILL. ADMIN. CODE § 504.8730(e). But Russell gave the grievance officer less than a week to respond before he appealed to the ARB. That is simply not enough time. Consequently, he did not complete the grievance procedure and the April 26, 2018 grievance was not fully exhausted. *See Jackson v. Shepherd*, 552 Fed.Appx. 591, 592 (7th Cir. 2014) (no exhaustion where prisoner gave prison only two weeks to respond to non-emergency grievance before filing suit); *Ford v. Johnson,* 362 F.3d 395, 400 (7th Cir. 2004) (no exhaustion where prisoner sued before the expiration of § 504.830(d)'s 60–day period).[10]

Additionally, the content of this grievance is not sufficient to exhaust as to Wexford. It does not name or describe Wexford nor does it directly or indirectly mention anything about being denied medical care due to a prison-wide policy or practice of trying to save money. This grievance also does not exhaust his claims against Warden Brookhart. Russell wrote in the grievance that he had written to Warden Brookhart "a couple of times" about waiting more than 60 days for a response from his counselor or the grievance officer. He does not include any complaints about Brookhart herself failing to provide him with necessary medical care by deeming his grievances non-emergencies or failing to act on the in-person requests for medical care that he made to her.

---

[10] The Court recognizes that Russell has offered several stories with respect to the steps he took in pursing the April 26, 2018 grievance (*See e.g.*, Doc. 60-1 (first response brief); Doc. 65, pp. 6, 12 (second response brief); Doc. 66 (third response brief)). At first blush, this would appear to require an evidentiary hearing to resolve which story, if any, should be credited. But as outlined *supra*, a careful review of Russell's responses reveals that under any of the scenarios he offered, he failed to exhaust his administrative remedies with respect to the April 26, 2018 grievance. Accordingly, the Court elected to resolve this issue on the papers without an evidentiary hearing.

In sum, none of the four grievances mention Wexford or complain about a prison-wide policy or practice of considering cost when determining treatment options that resulted in providing inadequate medical care. And to the extent any of the grievances complained about the conduct of Wexford employees, as Plaintiff argues (Doc. 60-1, pp. 7, 8, 24), a complaint about an individual medical provider's conduct is not sufficient to alert prison officials to a systemic problem with Wexford's policies or procedures. Therefore, Wexford's motion for summary judgment (Doc. 47) is granted.

As for Dee Dee Brookhart, the September 6, 2017 grievance was about issues that pre-dated his arrival at Lawrence, so it is impossible to have grieved Brookhart's conduct. The same goes for Dr. Ahmed. The October 15, 2017 grievance and the November 2, 2017 grievance do not mention Brookhart or Dr. Ahmed or describe any conduct attributable to them. While the April 26, 2018 grievance does name Brookhart, the grievance was not properly exhausted and does not complain about Brookhart's conduct at issue in this case. The April 26, 2018 grievance also names Dr. Ahmed, but once again, it was not properly exhausted and it was also not timely filed within 60 days of any conduct attributable to Dr. Ahmed. Consequently, Brookhart and Dr. Ahmed's motions for summary judgment (Docs. 51, 56) are also granted.

## Conclusion

The motions for summary judgment on the issue of exhaustion filed by Wexford Health Sources, Inc., Dr. Faiyaz Ahmed, and Dee Dee Brookhart (Docs. 47, 51, 56) are

**GRANTED**. This case is dismissed without prejudice for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

    **IT IS SO ORDERED.**

    **DATED: March 2, 2021**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**
